UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

**In Re:**

**Natalia Rose Nevin,**

**Debtor.**

Chapter 7

Bankruptcy No. 21-41171

---

**Mary R. Jensen, Acting United States Trustee,**

        **Plaintiff,**

**v.**

**Natalia Rose Nevin,**

        **Defendant.**

Adv. No. _____

**COMPLAINT FOR DENIAL OF DISCHARGE**

---

Plaintiff, Mary R. Jensen, Acting United States Trustee, for her complaint against Natalia Rose Nevin, the defendant, states and alleges as follows:

1. Mary R. Jensen is the Acting United States Trustee for Region 12, which covers the Federal Judicial Districts of Iowa (Northern & Southern Districts), Minnesota, North Dakota, and South Dakota. The United States Trustee ("UST") has standing to commence this adversary proceeding pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 727(c)(1).

2. Ms. Nevin is a resident of the State of Minnesota. She filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on June 29, 2021. The

bankruptcy case is captioned *In re Natalia Rose Nevin*, case number 21-41171, Bankr. D. Minn., Fourth Division, and it remains open.  Randall L. Seaver was appointed as the chapter 7 trustee.

3. This complaint is filed under Fed. R. Bankr. P. 7001(4) and seeks an order denying Ms. Nevin's discharge in this case under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), and (a)(4)(A).

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding.

5. The UST consents to entry of final judgment by the bankruptcy court in this matter.

### Ms. Nevin Transfers Funds to Kevin Nevin

6. The following allegations are made upon information and belief.

7. Ms. Nevin was formerly employed by her father, Kevin Mark Nevin.  Ms. Nevin began working for Mr. Nevin in approximately 2007.  At the time, Mr. Nevin was a registered investment advisor, and he sold various insurance and investment products.  At the outset of her employment, Ms. Nevin primarily performed administrative tasks for Mr. Nevin.  Ms. Nevin earned a salary of approximately $60,000 beginning in approximately 2010.

8. In 2014, the Financial Industry Regulatory Authority ("FINRA") initiated an

2

action against Mr. Nevin. FINRA suspended Mr. Nevin for six months and fined him $37,000. Mr. Nevin's suspension lasted from June 2, 2014 to December 1, 2014. During that time period, he was not permitted to maintain client funds in accounts bearing his name.

9. In response to Mr. Nevin's suspension, Ms. Nevin obtained her FINRA Series 7 and Series 66 licenses and became a registered investment advisor. The licensure and her status as a registered investment advisor permitted Ms. Nevin to hold client funds in accounts bearing her name. Mr. Nevin transferred his clients' funds to accounts bearing Ms. Nevin's name in order to continue operating his business. Ms. Nevin also began to collect 5% of any commissions that Mr. Nevin generated.

10. On or about July 31, 2012, Mr. Nevin incorporated Financial & Investment Advisors, Inc. ("FIA"). Mr. Nevin was the Chief Executive Officer of FIA. FIA held an account at U.S. Bank. Ms. Nevin was an authorized signer on FIA's U.S. Bank account.

11. After Mr. Nevin's suspension ended, Ms. Nevin continued to hold client funds in accounts bearing her name.

12. On or about May 8, 2019, Ms. Nevin entered into a contract with SmartLife Financial Group, LLC ("SmartLife") to serve as an Investment Adviser Representative. In general, the agreement provided that Ms. Nevin was entitled to a

3

certain percentage of fees generated by any client accounts held by SmartLife.

13.     Ms. Nevin's financial records show that she received $132,617.13 from SmartLife between August 16, 2019 and December 16, 2020. During the same time period, she transferred $133,675.00 to FIA. Ms. Nevin initiated and authorized all of the transfers.

14.     Between June 16, 2020 and June 29, 2021, FIA transferred $37,900.00 to a U.S. Bank account owned jointly by the Nevins.

15.     Meanwhile, in July of 2020, Mr. Nevin began negotiating with CorePath Wealth Partners, LLC ("CorePath") for the sale of his client relationships. In late August of 2021, CorePath discovered that Ms. Nevin, not Mr. Nevin, was the Investment Adviser Representative, and that she, not Mr. Nevin, would need to sell the client relationships to CorePath.

16.     On or about September 22, 2021, Mr. Nevin executed a promissory note in favor of Ms. Nevin. Ms. Nevin claimed that Mr. Nevin owed her money for unpaid salary. The note obligated Mr. Nevin to pay Ms. Nevin $60,000 within thirty-six months. Ms. Nevin required Mr. Nevin to execute the promissory note as a condition of her agreement to sell Mr. Nevin's client relationships to CorePath.

17.     On or about September 29, 2021, CorePath, Ms. Nevin, and Mr. Nevin entered into an Asset Purchase Agreement ("APA"). The APA indicated that the Nevins

4

sold eighty-eight client investment accounts with a total value of $11.7 million, and that the accounts generated approximately $142,000 in fees. The APA provided for an immediate payment of $5,000 and subsequent payments of $20,000, and $17,600 to the Nevins upon the transfer of a certain number of client accounts to CorePath. In addition, the APA provided for the payment of additional compensation to the Nevins in the form of a percentage of fees generated by the client accounts for a period of twenty-four months. To date, CorePath has paid $79,704.64 to Kevin Nevin. Those funds appear to have been deposited into the U.S. Bank account held jointly by the Nevins.

18. Ms. Nevin also entered into a verbal agreement with Mr. Nevin that provided that Mr. Nevin would begin making payments to her when Mr. Nevin began receiving payments pursuant to the APA.

19. FINRA provides for arbitration of disputes between brokers and investors. On or about October 6, 2020, Dan Burns and Dawn Burns, former clients of the Nevins, filed a Statement of Claim with FINRA to initiate the arbitration process. The Statement of Claim named the Nevins as well as other parties as defendants.

20. Between October 19, 2020 and December 16, 2020, Ms. Nevin transferred $19,000 to FIA.

21. On or about March 24, 2021, the Burnses moved for entry of a default award

5

of $962,096 against Mr. Nevin and $626,407 against Ms. Nevin. The Burnses also requested an additional award of attorney fees, costs, and punitive damages.

## Fraudulent Bankruptcy Filing

22. On June 29, 2021, Ms. Nevin filed a voluntary chapter 7 petition, bankruptcy schedules, and a statement of financial affairs.

23. On schedule A/B, Ms. Nevin failed to disclose a U.S. Bank account held jointly with Mr. Nevin.

24. On schedule A/B, Ms. Nevin failed to disclose her interest in the U.S. Bank account held in the name of FIA.

25. On schedule A/B, Ms. Nevin failed to disclose her interest in the APA.

26. On schedule A/B, Ms. Nevin failed to disclose her verbal agreement with Mr. Nevin that provided that Mr. Nevin would begin making payments to her when Mr. Nevin began receiving payments pursuant to the APA.

27. On the statement of financial affairs, Ms. Nevin failed to disclose any of the transfers from her U.S. Bank account to FIA.

## Ms. Nevin Testifies Falsely at Her Meeting of Creditors

28. Mr. Seaver convened the meeting of creditors on July 29, 2021. At the meeting of creditors, Ms. Nevin testified falsely as follows:

    a. That she listed all of her assets in her schedules.

  b. That she did not transfer any property or any interest in property to anyone in the two years prior to her bankruptcy filing.

  c. That Mr. Nevin did not have any assets.

29. Mr. Seaver also questioned Ms. Nevin at the meeting of creditors about the collectability of the debt owed to her by Mr. Nevin. At no time did Ms. Nevin reveal the existence of the APA, the verbal agreement with Mr. Nevin, or the fact that CorePath was depositing funds into the U.S. Bank account held jointly by the Nevins, pursuant to the terms of the APA.

### Ms. Nevin Files False Amended Documents

30. Counsel for the UST and the chapter 7 trustee conducted a Rule 2004 examination of Ms. Nevin on January 4, 2022. At the examination, Ms. Nevin revealed, for the first time, her involvement with the transaction later identified as the APA, and the verbal agreement she entered into with Mr. Nevin. Ms. Nevin did not disclose that she had a contractual right to payments pursuant to the APA.

31. On January 5, 2022, Ms. Nevin filed an amended schedule A/B and an amended statement of financial affairs. On amended schedule A/B, Ms. Nevin disclosed the FIA bank account and the U.S. Bank account held jointly with Mr. Nevin. She did not, however, disclose the APA or her verbal agreement with Mr. Nevin on amended schedule A/B. On the amended statement of financial affairs,

Ms. Nevin disclosed transfers "in excess of $100,000" to Mr. Nevin in the year prior to her bankruptcy filing.

## COUNT I
### TRANSFER OF PROPERTY OF THE DEBTOR WITH INTENT TO HINDER, DELAY, OR DEFRAUD A CREDITOR WITHIN ONE YEAR OF THE DATE OF THE FILING OF THE PETITION

32. The plaintiff re-alleges Paragraphs 1-31 as if fully set forth herein.

33. Ms. Nevin filed a voluntary chapter 7 petition on June 29, 2021.

34. Ms. Nevin transferred $19,000 to FIA within one year before June 29, 2021. She transferred the funds with the intent to hinder, delay, or defraud the Burnses.

35. As a result of Ms. Nevin's conduct, the plaintiff is entitled to an order denying her discharge under 11 U.S.C. § 727(a)(2)(A).

## COUNT II
### CONCEALMENT OF PROPERTY OF THE ESTATE WITH INTENT TO HINDER, DELAY, OR DEFRAUD THE CHAPTER 7 TRUSTEE AFTER THE DATE OF THE FILING OF THE PETITION

36. The plaintiff re-alleges Paragraphs 1-35 as if fully set forth herein.

37. Ms. Nevin filed a voluntary chapter 7 petition on June 29, 2021.

38. Ms. Nevin concealed her interest in the APA with the intent to hinder, delay, or defraud the chapter 7 trustee after the date of the filing of her bankruptcy petition.

39. Ms. Nevin concealed her interest in the U.S. Bank account held by FIA and the U.S. Bank account held jointly with Mr. Nevin with the intent to hinder, delay, or

defraud the chapter 7 trustee after the date of the filing of her bankruptcy petition.

40. The concealed property was property of the bankruptcy estate.

41. As a result of Ms. Nevin's conduct, the plaintiff is entitled to an order denying her discharge under 11 U.S.C. § 727(a)(2)(B).

## COUNT III
## FALSE OATHS IN OR IN CONNECTION WITH THE CASE

42. The plaintiff re-alleges Paragraphs 1-41 as if fully set forth herein.

43. Ms. Nevin knowingly and fraudulently made the false oaths set forth below.

44. Ms. Nevin filed a voluntary chapter 7 petition, schedules, and a statement of financial affairs on June 29, 2021.

45. On schedule A/B, Ms. Nevin failed to disclose a U.S. Bank account held jointly with Mr. Nevin.

46. On schedule A/B, Ms. Nevin failed to disclose her interest in the U.S. Bank account held in the name of FIA.

47. On schedule A/B, Ms. Nevin failed to disclose her interest in the APA.

48. On schedule A/B, Ms. Nevin failed to disclose her verbal agreement with Mr. Nevin that provided that Mr. Nevin would begin making payments to her when Mr. Nevin began receiving payments pursuant to the APA.

49. On the statement of financial affairs, Ms. Nevin failed to disclose any of the transfers from her U.S. Bank account to FIA.

50. At the meeting of creditors held on July 29, 2021, Ms. Nevin testified falsely as follows:

    a. That she listed all of her assets in her schedules.

    b. That she did not transfer any property or any interest in property to anyone in the two years prior to her bankruptcy filing.

    c. That Mr. Nevin did not have any assets.

51. Mr. Seaver also questioned Ms. Nevin at the meeting of creditors about the collectability of the debt owed to her by Mr. Nevin. At no time did Ms. Nevin reveal the existence of the APA, the verbal agreement with Mr. Nevin, or the fact that CorePath was depositing funds into the U.S. Bank account held jointly by the Nevins, pursuant to the terms of the APA.

52. On January 5, 2022, Ms. Nevin filed an amended schedule A/B and an amended statement of financial affairs.

53. On amended schedule A/B, Ms. Nevin failed to disclose the APA or her verbal agreement with Mr. Nevin.

54. The false oaths set forth above were material omissions regarding Ms. Nevin's property, property of the estate, or her financial transactions.

55. As a result of Ms. Nevin's false oaths, the plaintiff is entitled to an order denying her discharge under 11 U.S.C. § 727(a)(4)(A).

WHEREFORE, the plaintiff requests that this Court enter an order and judgment denying Ms. Nevin's discharge under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), and (a)(4)(A), together with such other and further relief as the Court deems just and equitable.

Dated: May 25, 2022                    MARY R. JENSEN
                                              ACTING UNITED STATES TRUSTEE
                                              REGION 12

                            BY:    /e/ Colin Kreuziger
                                       Colin Kreuziger
                                       MN Attorney No. 0386834
                                       Trial Attorney
                                       United States Department of Justice
                                       1015 U.S. Courthouse
                                       300 South Fourth Street
                                       Minneapolis, MN 55415
                                       (612) 334-1350
                                       Colin.Kreuziger@usdoj.gov

## VERIFICATION

      I, Colin Kreuziger, a trial attorney for the United States Trustee, the Plaintiff herein, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on May 25, 2022

/e/ Colin Kreuziger
Colin Kreuziger
Trial Attorney
MN Atty No. 0386834
Office of U.S. Trustee
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 334-1350
